**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Mihaela Balaban** | : | **Case No.1:07-cv-1366** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| v. | : | |
| **City of Cleveland** | : | **MEMORANDUM & ORDER** |
| **Defendant.** | : | |

The Court has before it two filings: (1) *Plaintiff's Motion for Summary Judgment* (Doc. 14); and (2) the defendant's *Motion for Summary Judgment* (Doc. 15). For the reasons articulated below, the Court **GRANTS** the defendant's motion and **DENIES** the plaintiff's motion.

**I.     BACKGROUND**

Section 413.031 of the Codified Ordinances of Cleveland, Ohio ("Ordinance") establishes an automated traffic enforcement camera system, whereby cameras photograph cars exceeding the speed limit or running a red light and the City issues each car's owner a Notice of Liability ("Notice"). On August 25, 2006 and September 6, 2006, these cameras recorded Plaintiff Mihaela Balaban ("Balaban") speeding, and Defendant City of Cleveland ("the City") issued Balaban two Notices for speeding shortly thereafter. Each citation imposed a fine of $100. Balaban requested a hearing for each Notice; the City consolidated the requests and held one hearing on October 19, 2009.

A hearing examiner from the City's Parking Violations Bureau, Photo Safety Division conducted the hearing, in which Balaban generally denied liability and objected to the Ordinance

and the hearing procedure based on the Ohio Constitution's Home Rule Amendment and the due process clauses of the U.S. and Ohio Constitutions. The hearing examiner found her "guilty" of both violations. Balaban filed two administrative appeals and this facial challenge to the Ordinance's constitutionality in the Cuyahoga County Court of Common Pleas, seeking declaratory judgment and relief under 42 U.S.C. § 1983. The City removed this case to federal court and stayed collection activities pending the outcome of Balaban's administrative appeals in the Court of Common Pleas.

Balaban alleges that certain deficiencies, including the use of hearsay testimony and unauthenticated electronic evidence and the hearing examiner's role as "prosecutor, judge and jury," resulted in procedural and substantive due process violations under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16, of the Ohio Constitution. Pl.'s Mot. Summ. J. 5. She also alleges that the Ordinance violates the Home Rule provision in Article XVIII, Section 3, of the Ohio Constitution.

## II.  STANDARD OF REVIEW

This case arises on cross motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Rule 56(c) governs summary judgment motions and provides: "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> (1) *In General.* A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify to the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed

> by depositions, answers to interrogatories, or additional affidavits.
>
> (2) *Opposing Party's Obligation to Respond.* When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Singfield v. Akron Metropolitan Housing Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The nonmoving party is under an affirmative

duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

### III. ANALYSIS

#### A. Plaintiff's Procedural Due Process Claims

Balaban's central claim is that the Ordinance violates the procedural due process protections contained in the the United States Constitution's Fifth Amendment and the "due course of law" clause of the Ohio Constitution. As an initial matter, it is clear that Balaban may not pursue a Fifth Amendment claim against the city, because the Fifth Amendment applies to the federal government and not to states or their instrumentalities. *Scott v. Clay County,* 205 F.3d 867, 873 n.8 (6th Cir. 2000); *see also Myers v. Village of Alger*, 102 Fed. Appx. 931, 933 (6th Cir. 2004).

Balaban's only plausible due process claims, therefore, fall under the Fourteenth Amendment, which incorporates the protections of the Fifth, and the Ohio Constitution. The Ohio Constitution's "due course of law" provision, contained in Article 1, Section 16, is equivalent to the Fourteenth Amendment's Due Process Clause, however. *Arbino v. Johnson & Johnson*, 880 N.E.2d 420, 478 (Ohio 2007). The Court, thus, uses the same analytical framework for both provisions.

##### 1. Applicable Law.

Because Balaban argues that the Ordinance imposes criminal or "quasi-criminal" sanctions, and that she should therefore be given the protections and process due a criminal defendant, the Court first determines whether the Ordinance imposes a civil or criminal sanction.

The Supreme Court outlined the framework for distinguishing between civil and criminal penalties in *Hudson v. United States*. 522 U.S. 93, 99-100 (1997). Under it, this Court must first

-4-

evaluate whether the legislature enacting the law intended to impose a criminal or civil sanction. *Id.* at 99. The Court may consider three prongs in determining legislative intent: the purpose or objective of the legislation, the manner of its codification, and the enforcement procedures it establishes. *Smith v. Doe*, 538 U.S. 84, 93-94 (2003).

If the legislature intended to create a civil penalty, the *Hudson* test then asks whether the purpose or effect of the law was nonetheless "so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Hudson*, 522 U.S. at 99 (citation and internal quotation marks omitted). The Supreme Court has identified several "useful guideposts" for that inquiry:

   1) whether the sanction involves an affirmative disability or restraint;

   2) whether it has historically been regarded as a punishment;

   3) whether it comes into play only on a finding of scienter;

   4) whether its operation will promote the traditional aims of punishment – retribution and deterrence;

   5) whether the behavior to which it applies is already a crime;

   6) whether an alternative purpose to which it may rationally be connected is assignable for it; and

   7) whether it appears excessive in relation to the alternative purpose assigned.

*Id.* at 99-100 (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)). These factors are neither dispositive nor exhaustive. *Smith*, 538 U.S. at 97. The Supreme Court has instructed that they "must be considered in relation to the statute on its face, and only the clearest proof will suffice to override legislative intent." *Hudson*, 522 U.S. at 100 (citation and internal quotation marks omitted).

### 2. Applying the *Hudson* Test to the Ordinance.

#### a. Legislative Intent.

Balaban does not appear to contest that Cleveland City Council intended to create a civil sanction when it enacted the Ordinance. The Ordinance's title announces that purpose: "Use of Automated Cameras to Impose *Civil* Penalties upon Red Light and Speeding Violators." § 413.031 (emphasis added). Its first sub-section, titled "*Civil* enforcement system established," states that the "City of Cleveland hereby adopts a *civil* enforcement system for red light and speeding offenders." *Id.* (emphasis added). The Ordinance goes on to repeatedly characterize the penalty and the enforcement system as civil. *Id.* It explicitly bars a violation from being considered a conviction and does not allow such an offense to become part of the owner's driving record. § 413.031 (d). In the face of this uncontradicted evidence, the Court finds that the legislative intent was to create a civil sanction.

#### b. Consideration of the Relevant Factors.

Having found the intent to impose civil liability, the Court must now consider whether there is "the clearest proof" that the law, on its face, is so punitive as to override the legislative intent and, in effect, impose a criminal penalty. The Court does so by addressing each of the *Hudson* factors in turn, as well as the City's characterization of an offense under the ordinance in its administrative records, which the facts of this case make relevant to the analysis.

##### i. Affirmative Disability or Restraint.

Applying the first of the *Hudson* factors, the sanction imposed by the Ordinance is not an affirmative disability or restraint. A "minor and indirect" disability is generally not considered punitive. *Smith*, 538 U.S. at 101. The only penalty the Ordinance authorizes is a fine of $100 to $200, depending on the violation, and an additional late fee of up to $60. § 413.031 (o). It does not

-6-

allow notation on an offender's criminal record or any other penalty, and it certainly does not authorize physical detention or imprisonment, the "paradigmatic affirmative disability or restraint." *Smith*, 538 U.S. at 101. The Supreme Court, in finding that a fine did not impose an affirmative disability or restraint, stated that "the payment of fixed or variable sums of money [is a] sanction which ha[s] been recognized as enforcible by civil proceedings since the original revenue law of 1789." *Hudson*, 522 U.S. at 104 (alterations in original); *cf. Harmelin v. Michigan*, 501 U.S. 957, 978 n.9 (1991) (Scalia, J., announcing the judgment of the Court) (noting that disproportionately high fines "are certainly punishments").[1] This Court finds that the Ordinance's relatively small fine is not a punitive disability or restraint, and this finding supports a determination that the Ordinance is civil in nature. *Accord Kilper v. City of Arnold*, No. 4:08cv0267, 2009 WL 2208404, at *15 (E.D. Mo. July 23, 2009) (ultimately holding that an automated traffic camera ordinance was civil in nature); *Shavitz v. City of High Point*, 270 F. Supp. 2d 702, 714 (M.D.N.C. 2003) (ultimately holding that an automated traffic camera ordinance was civil in nature), *vacated on other grounds sub nom. Shavitz v. Guilford County Bd. of Educ.*, 100 Fed. Appx. 146 (4th Cir. 2004).

### ii. Historically Regarded as Punishment.

Second, relatively small monetary fines have not historically been regarded as punishment. The Supreme Court said as much in *Hudson*, 522 U.S. at 104, and Balaban offers no argument to the contrary. This factor suggests that the Ordinance is civil in nature. *Accord Kilper*, 2009 WL 2208404, at *15; *Shavitz*, 270 F. Supp. 2d at 714.

### iii. Requirement of Scienter.

Third, the Ordinance does not require a finding of scienter, a fact Balaban does not dispute.

---

[1] In this portion of the opinion, Justice Scalia was joined only by Justice Rehnquist.

This factor also suggests that the Ordinance is civil in nature.

### iv. Promoting the Traditional Goals of Punishment.

Fourth, the Court considers whether the Ordinance promotes the traditional aims of punishment: retribution and deterrence. The City concedes that the Ordinance uses monetary penalties to deter behavior that threatens the "safe and efficient use" of Cleveland streets. Def.'s Mot. Summ. J. 15. As the *Shavitz* court correctly noted, "[e]ven though the ordinance may have a goal beyond the traditional aims of punishment, Defendants are nevertheless using a tool of deterrence–monetary penalties–to reach that goal." *Shavitz*, 270 F. Supp. 2d at 715. This factor therefore supports Balaban's contention that the Ordinance imposes a criminal sanction.

### v. The Conduct is Also a Crime.

The fifth factor similarly weighs against labeling the sanction as civil: speeding and running red lights are also criminal acts under Cleveland Codified Ordinance § 403.99. The City concedes this fact. Def.'s Mot. Summ. J. 16.

### vi. Rationally Related to an Alternative Purpose.

The sixth factor is whether the Ordinance is rationally connected to a nonpunitive purpose. The City maintains that the Ordinance's purpose is to promote safe and efficient use of Cleveland streets. Def.'s Mot. Summ. J. 16. Public safety is certainly a legitimate nonpunitive purpose. *See Smith*, 538 U.S. at 102-03. The Ordinance relates to safety by penalizing, and thus seeking to deter, those who speed and run red lights, with higher monetary penalties assigned to conduct that appears to carry a higher risk to the public safety: speeding in school and construction zones and exceeding the speed limit by 25 miles per hour or more. § 413.031 (o). The Ordinance need not be perfectly tailored to these nonpunitive aims; it simply must be rationally related so as to avoid the appearance that the nonpunitive purpose is "a sham or mere pretext." *Smith*, 538 U.S. at 103 (internal quotation

-8-

marks omitted). The City's Ordinance easily satisfies this inquiry. Because it is rationally related to the legitimate nonpunitive purpose of public safety, this factor weighs in favor of labeling the Ordinance as civil. *Accord Kilper*, 2009 WL 2208404, at *16; *Shavitz*, 270 F. Supp. 2d at 715-16.

### vii. Excessive in Relation to the Alternative Purpose.

The seventh, related inquiry is whether the penalties appear excessive to the nonpunitive purpose–safety–assigned to the ordinance. Neither party offers anything more than a cursory statement that the fine of $100 or $200, depending on the conduct, is or is not excessive. The Court finds that the penalty is not excessive, particularly in light of the fact that no points are assigned for a violation on the owner's driving or insurance record and the ordinance does not impose criminal responsibility on the owner. This final factor weighs in favor of labeling the ordinance as civil.

### viii. Administrative Label for the Offense.

The Court notes one additional, troubling factor. The hearing examiner, at the conclusion of Balaban's hearing, announced his finding as "guilty." App. 5 to Compl. Taken alone, his statement could be seen as a poor choice of words and nothing more. But the City's written notice to Balaban of the examiner's findings also describes the disposition as "GUILTY." Exhibit C to Def.'s Mot. Summ. J.  From this notice, it appears that the City actually uses the term "guilty," *not* "liable," to describe someone who violates the Ordinance. This practice contradicts the City's insistence, in its briefs, that the Ordinance imposes *civil* liability.

### c. Weighing the Factors to Determine the Law's Purpose and Effect.

The Court has considered each of *Hudson*'s "guideposts." Five of the seven *Hudson* factors suggest that the ordinance is civil. Included in this number is the inquiry into whether the ordinance serves a nonpunitive purpose, a "most significant factor," according to the Supreme Court. *Smith*, 538 U.S. at 102.

The two *Hudson* factors suggesting a criminal penalty–its function as a deterrent and the criminalization of the same conduct–are not sufficient to override legislative intent. As the Supreme Court has found, "the mere presence of [a deterrent] purpose is insufficient to render a sanction criminal, as deterrence may serve civil as well as criminal goals." *Hudson*, 522 U.S. at 105 (internal quotation marks omitted). Additionally, the Supreme Court has held that the fact that conduct may also be criminal "is insufficient to render [the penalties] criminally punitive." *Id.* at 105; *accord Gardner v. City of Columbus*, 841 F.2d 1272, 1277 (6th Cir. 1988) ("[T]he fact that a legislature has imposed both a civil and a criminal sanction for the same act does not transform the civil penalty into a criminal penalty."). Nor does this Court find that the City's use of the term "guilty" in its hearing records, while both unnecessary and likely unwise, so transforms the Ordinance's as to render it "so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Hudson*, 522 U.S. at 99.

Balaban has failed to provide the "clearest proof" of the Ordinance's punitive nature, which is required to overcome City Council's legislative intent that the Ordinance impose a civil sanction on violators. The Court therefore finds that the sanction is civil in nature.

### 3. Whether the Ordinance Satisfies Due Process.

Accordingly, the Court must consider whether the Ordinance satisfies due process requirements for a civil penalty.[2] The Ordinance provides for two stages of review before a ticket is issued, an administrative hearing conducted by a hearing examiner, and further appeal of liability

---

[2] The Court notes that Balaban has not raised the issue of whether the Ordinance complies with its own notice requirement, which is related to due process's protections. The Ordinance requires the Director of Public Safety to notify the general public through a press release at least 30 days before "any given camera" becomes fully operational. § 413.031 (g). Because the camera that recorded Balaban's speed was a "mobile unit," there may be a question of whether the City met its own notice requirements. That issue, however, is not before this Court.

-10-

to Ohio's courts.

At the outset, two categories of Balaban's claims cannot succeed. First, her arguments that she should be afforded the protections given to criminal defendants fail because, as the Court has already discussed, the Ordinance does not impose a criminal penalty. Second, many of Balaban's arguments are rooted in the proposition that the hearing must adhere to the formal rules of evidence, which would, according to Balaban, exclude much of the City's evidence against her. This argument cannot be sustained, as it ignores the Sixth Circuit's holding that "the technical rules for the exclusion of evidence applicable to jury trials do not apply to proceedings before federal [or state] administrative agencies." *Gardner v. City of Columbus*, 841 F.2d 1272, 1280 (6th Cir. 1988) (internal quotation marks omitted).

To the extent that Balaban's claims do not rely on the requirements of criminal proceedings or argue for application of the formal rules of evidence, this Court applies the balancing test laid out by the Supreme Court in *Matthews v. Eldridge*. 424 U.S. 319, 335 (1976). Under *Matthews*, the Court considers the following factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.*

In addressing the first *Matthews* factor, the Court assumes that Balaban's private interest at stake is her interest in retaining the money she owes under the Ordinance: $100 per violation. The Court does not address, as unnecessary to the outcome, the City's argument that no private interest has been affected because it has stayed collection efforts of Balaban's unpaid fine while she appeals to the Court of Common Pleas.

-11-

Under the second *Matthews* factor, the risk of erroneous deprivation of Balaban's interest is slight, given the calibration and testing of the cameras, the repeated review of the facts before a citation is issued, the right to a hearing and appeal, and the opportunity for the owner to identify the offending driver, if it is not the owner. Balaban argues that the City must do more to demonstrate the accuracy of the cameras, such as presenting expert testimony that conforms to the Supreme Court's requirements for scientific and technical evidence. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151-52 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-95 (1993). But the City has presented evidence in a sworn affidavit and Cleveland Police Department records that the camera at issue here passed tests for accuracy on August 24 and August 29, 2006, one day prior to and four days after, respectively, Balaban's first citation. Vargas Aff. ¶ 11; Def.'s Exh. D. The same camera passed accuracy tests again on September 5 and September 7, 2006, the day before and the day after her second citation. Def.'s Exh. E. This unrebutted evidence provides substantial protection against any risk of erroneous deprivation of Balaban's property. Given the safeguards already in place, the additional procedures for which Balaban advocates have relatively minimal value.

Under the third *Matthews* factor, the City's has a strong interest in traffic safety, which underlies the Ordinance. Additionally, the City's interest in not having to conduct a full evidentiary hearing that adheres to the formal rules of evidence and applies *Daubert*'s stringent requirements is strong, given the substantial fiscal and administrative burdens such a requirement would add.[3]

---

[3] The Court agrees with the City's suggestion that requiring a formal hearing may work against many people in Balaban's shoes who wish to contest a citation. As the Sixth Circuit noted in a due process challenge to a parking ticket ordinance, "[s]ince in most instances the violator will be self-represented due to the nature of the violation and the cost of retaining an attorney, it is very sensible to lower the technical standards for presenting evidence to facilitate the *pro se* party's presentation of his case." *Gardner v. City of Columbus*, 841 F.2d 1272, 1280 (6th Cir. 1988). While this concern certainly could not justify allowing the City to impose

In balancing these three factors, the Court finds that the City's substantial interests in public safety and administrative efficiency and the already-existing safeguards outweigh the low risk that Balaban will be erroneously deprived of $100 per citation. The Court therefore holds that the Ordinance does not violate the due process guarantees of either the U.S. or Ohio Constitution. Other courts within the Northern District of Ohio, examining this or similar ordinances, have reached the same result. *See Gardner v. City of Cleveland*, No. 1:07-cv-1601, 2009 WL 2591621, at *6 (N.D. Ohio Aug. 20, 2009)*; McCarthy v. City of Cleveland*, No. 1:09-cv-1298, 2009 WL 2424296 (N.D. Ohio Aug. 6, 2009); *Mendenhall v. City of Akron*, No. 5:06-cv-154 (N.D. Ohio Dec. 9, 2008). Indeed, many courts outside of Ohio have reached the same conclusion regarding similar traffic camera ordinances. *See, e.g., Kilper*, 2009 WL 2208404; *Shavitz*, 270 F. Supp. 2d 702.

Accordingly, the Court hereby grants the City's motion for summary judgment and denies Balaban's motion for summary judgment on Balaban's procedural due process claims.

### B.    Plaintiff's Substantive Due Process Claims

Balaban also claims that the Ordinance violates her substantive due process rights, guaranteed under the Fourteenth Amendment to the United States Constitution. The Sixth Circuit has held that the scope of review for federal courts hearing a substantive due process challenge to state administrative action is "extremely narrow." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221 (6th Cir. 1992). This Court applies rational basis scrutiny to the Ordinance because its small monetary penalties do not implicate a fundamental right. *See Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009); *Gardner*, 2009 WL 2591621, at *6. To succeed in her claim, therefore, Balaban must show that the Ordinance has no rational basis in a legitimate governmental interest.

---

liability based on blatantly unreliable evidence, the Court does not find that this case raises such concerns.

The City claims interests in deterring traffic violations and promoting public safety and argues that it is rational for the city to assume that a vehicle's driver is usually the owner. Def.'s Motion Summ. J. 27-28. The Court agrees that these legitimate interests appear rationally related to the ordinance, and Balaban does not argue otherwise. Other courts, both in the Northern District and elsewhere, are in accord. *See Idris*, 552 F.3d at 566; *Gardner*, 2009 WL 2591621, at *7. The Court, therefore, finds no substantive due process violation and hereby grants the City's motion for summary judgment and denies Balaban's motion for summary judgment on that portion of her claim.

### C.     42 U.S.C. § 1983

A claim under § 1983 must be based on a violation of federal law. Because the Court finds that the Ordinance does not violate federal law, the Court hereby grants the City's motion for summary judgment and denies Balaban's motion for summary judgment on her second cause of action.

### D.     Plaintiff's Other State Law Claims

Balaban initially alleged that the Ordinance also violates the home rule provisions of the Ohio Constitution, Article XVIII, Section 3. As both parties acknowledge in their motions, the Ohio Supreme Court has since ruled against a similar challenge, holding that "[a]n Ohio municipality does not exceed its home rule authority when it creates an automated system for enforcement of traffic that imposes civil liability upon violators, provided that the municipality does not alter statewide traffic regulations." *Mendenhall v. City of Akron*, 881 N.E.2d 255, syllabus (Ohio 2008). Based on the Ohio Supreme Court's interpretation of this provision of the Ohio Constitution, the Court hereby grants the City's motion for summary judgment on Balaban's home rule claim.

Balaban also claims that the Ordinance violates Article I, Section 10 of the Ohio Constitution. Titled "Rights of Criminal Defendants," this provision does not apply to civil or

administrative proceedings. *Cf. State v. Williams*, 728 N.E.2d 342, 357 (Ohio 2000) (finding that the double jeopardy clause in Article I, Section 10 does not apply to a statute that is not criminal and does not inflict criminal punishment on violators). Because the Court has already determined that the Ordinance does not impose criminal sanctions, it does not implicate the Ohio Constitution's protections for criminal defendants. Therefore, the Court grants the City's motion for summary judgment and denies Balaban's motion for summary judgment on her claim under Ohio Constitution Article I, Section 10.

## IV.   CONCLUSION

For the reasons set forth in this opinion, the Court hereby **GRANTS** the City of Cleveland's Motion for Summary Judgment (Doc. 14) and **DENIES** Balaban's Motion for Summary Judgment (Doc. 15).  Because the City's Motion seeks judgments as to all claims in this action, under both Federal and State law, this case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

**s/Kathleen M. O'Malley**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: February 5, 2010**